UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ALLEN D. MCCLOSKEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>HUMBOLDT COUNTY SHERIFF'S DEPARTMENT, et al.,<br><br>    Defendants. | Case No. 23-cv-01699-RMI<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

Now pending before the court is Defendants' Motion to Dismiss (dkt. 25) Plaintiffs' First Amended Complaint ("FAC") (dkt. 22). Plaintiffs have filed a response in opposition (dkt. 27), and Defendants have filed a reply (dkt. 30). Additionally, after the filing of Defendants' dismissal motion, Plaintiffs submitted a request (dkt. 26) to file a voluminous "confidential" supplement to the FAC, under seal, spanning approximately 320-pages. Defendants have filed a response (dkt. 29) opposing Plaintiffs' request to supplement. Plaintiffs then filed a request (dkt. 32) seeking to supplement the FAC, for which Defendants have also filed a response in opposition (dkt. 33). These matters having been fully briefed, as set forth in Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds them suitable for disposition without oral argument. For the reasons stated below, Defendants' motion to dismiss the FAC with prejudice is granted in part and denied in part, and Plaintiffs' FAC is dismissed with leave to amend as set forth herein. Further, Plaintiffs' requests to supplement the FAC (dkts. 26, 32) are denied.

//

//

//

**LEGAL STANDARDS**

The currently-pending motion to dismiss (*see* dkt. 25 at 1), filed under Fed. R. Civ. P. 12(b)(6), challenges the sufficiency of the allegations set forth in the FAC. In reviewing the sufficiency of a complaint, before the presentation of any evidence either by affidavit or admissions, the court's task is limited – the issue is not whether a plaintiff will ultimately prevail, instead the issue is whether a plaintiff is even entitled to offer evidence to support the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Dismissal is proper when an operative complaint either fails to advance "a cognizable legal theory," or fails to allege "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In evaluating such motions, courts must: (1) construe the operative complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Courts "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir. 1986), and therefore courts must not "assume that the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

To survive dismissal under these standards, while complaints do not necessarily need to be hyper-detailed, they do need to contain enough relevant factual allegations such as to establish the grounds of a plaintiff's entitlement to relief – and, doing so "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 557). Under these standards, courts follow a "two-prong approach" for addressing a motion to dismiss: (1) first, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements; and, (2) only a complaint that states a *plausible* claim for relief survives a motion to dismiss. Plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense; however, where the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct that the complaint may have alleged, but failed to show that the pleader is entitled to relief as required by Fed. Rule Civ. P. 8(a)(2), plausibility is not established. *See generally Iqbal*, 556 U.S. at 678-79.

In light of these principles, a court considering a motion to dismiss can choose to begin by identifying allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by well-pleaded factual allegations. *Id*. When a complaint does in fact contain well-pleaded and factual allegations, courts will assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. In short, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must plausibly suggest a claim entitling the plaintiff to relief. *See Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

As to the nature of dismissals, leave to amend should be granted unless it becomes clear that amendment would be futile because further amendments cannot remedy the defects in the complaint. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

Rule 8 requires that a complaint put forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Each factual allegation in a complaint must therefore be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Dismissal on Rule 8 grounds is proper where the complaint is "argumentative, prolix, replete with redundancy, and largely irrelevant," *see McHenry v. Renne*, 84 F.3d at 1177, 1180 (9th Cir. 1996), or where it is "verbose, confusing and conclusory," *see Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). As a threshold matter, the court cannot avoid pointing out that Plaintiffs' FAC does not comply with Rule 8 in that its allegations are anything but "simple, concise, and direct." Indeed, the FAC fails to present a clear factual narrative *because* it is overwhelmed with argumentative content. Because it is so saturated by editorialization and conclusory assertions rather than clearly-asserted factual allegations, its presentation has become disjointed and difficult to comprehend. As to Plaintiffs' proposal to supplement the FAC with several hundred pages of additional material, the court finds that this would exacerbate the Rule 8 problem because adding such bulk to the FAC would only serve to worsen the reality that Plaintiffs' claims are not stated in a "'simple, concise, and direct' manner but are instead complicated, lengthy, and meandering." *See Cal. Coal. for Families & Children v. San Diego Cnty. Bar Ass'n*, 657 Fed. Appx. 675, 677-678 (9th Cir. 2016).

As best the court can discern – the following is the narrative contained within the FAC itself (as discussed below, the court will not sift through the hundreds of pages of material with which Plaintiffs wish to supplement the FAC) (dkt. 26). Plaintiffs (Allen Don McKlosky and Antonio Moreno Munguia – a married couple) have sued the County of Humboldt ("County"), its Health and Human Services Department, its Sheriff (William Honsal), and a number of unidentified individuals working for the County. *See* FAC (Dkt. 22) at 3, 4.[1] They contend that

---

[1] The FAC is signed by only Plaintiffs McCloskey and Moreno-Munguia who nevertheless assert that other unspecified members of "their household," as well as a deceased relative, Ms. Evelyn Natt, are also "plaintiffs." FAC, ¶¶ 4, 14, 17. In so doing, Plaintiffs' claims venture to blur the lines between injuries allegedly sustained by themselves and those suffered by these other individuals – e.g., allegations touching upon injuries suffered by unnamed members of their "household" stemming from the removal of their children into "non-native homes" (FAC, ¶12); allegations that plaintiffs' children and nieces had their hair

1    following Plaintiff Allen McCloskey's successful efforts to unionize employees at a certain
2    private sector employer (the relevance of which is not apparent), Plaintiffs decided "to pursue
3    adoption and provide foster placement care for children in crisis" – specifically, two sisters. *Id*. at
4    6. In another statement that similarly appears untethered to any of the claims or any other
5    allegations in the complaint, Plaintiffs then complain that certain "bloggers" on a "privately owned
6    and politically motivated" website, called "Lost Coast Outpost," then "orchestrated [a] political
7    attack piece against Plaintiff McCloskey to make way for their shoe-in candidate of choice," a
8    "fellow blogger." *Id*. at 7. Using nothing more than mere labels, argumentative statements
9    couched as fact, and conclusory assertions, Plaintiffs add that following two "unlawful arrests and
10   unlawful detainers of Plaintiff McCloskey," the Sheriff's Department allegedly failed to preserve
11   certain photos and videos that Plaintiffs believe were recorded on deputies' personal phones
12   during these arrests and episodes of detention – and, without any details, Plaintiffs assert that said
13   videos and pictures were shared with third parties, resulting in violations of their privacy. *See id*.
14   at 14-17. Plaintiffs do not describe the nature of the videos or pictures, nor do they mention the
15   identities or numbers of these third parties. Consequently, Plaintiffs assert that they have suffered
16   severe emotional distress, and allege that they have developed severe posttraumatic stress disorder,
17   major depression disorders, and have had to relocate outside of Humboldt County as a result of the
18   events that they have ventured to describe in the FAC.

---

cut (FAC, ¶12); allegations touching upon the violation of the "rights and protections" of the now-deceased Ms. Evelyn Natt (FAC, ¶¶14-19); claiming damages related to a non-party neighbor's home (FAC, ¶22); and, demanding the return of property and asserting damages on behalf of non-party Linda Franks-Roberts (*see* FAC at 23-24). Local Rule 3-9 provides that any party representing him or herself without an attorney must appear personally and may not delegate that duty to any other person who is not a member of the bar of this Court. *See* Civil L.R. 3-9(a); *see also Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997). In any event, it is well established that a *pro se* party has no authority to represent anyone else. *See Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962); *see also Weaver v. Wilcox*, 650 F2d 22, 27 (3rd Cir. 1981). "Although a non-attorney may appear in *propria persona* in his own behalf, that privilege is personal to him. He has no authority to appear as an attorney for others than himself." *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987); *see also McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966) (same). Furthermore, if any of the individuals in Plaintiffs' "household" are minors, legal representation would still be required, as a non-attorney parent cannot conduct the legal representation of a minor child. *See* Fed. R. Civ. P. 17(c)(2); *see also Johns*, 114 F.3d at 876. Additionally, the executor of a decedent's estate generally cannot represent the estate *pro se*. *See Simon v. Hartford Life and Accident Ins. Co.*, 546 F.33d 661, 664-665 (9th Cir. 2008.). Thus, in any amended complaint, Plaintiffs should only focus on alleging facts underlying injuries that they themselves suffered.

Claim-1, Claim-2, and Claim-11 (brought under 42 U.S.C. § 1983), and Claim-3 (a state-law claim), present allegations in support of claimed violations under the Second Amendment (purportedly based on the seizure of Plaintiff McCloskey's firearms at the time of one of both of his arrests); under the Fourth Amendment (seemingly relating to searches, seizures, and the degree of force used during Plaintiff McCloskey's detention and arrests); under the Fourteenth Amendment (which incorporates the aforementioned provisions such as to render them applicable to state actors); under state law for negligence; and under state law for various asserted violations of Plaintiffs' privacy rights as well as defamation.

In purported relation to the first, second, third, and eleventh causes of action,[2] Plaintiffs contend (in a highly editorialized and largely conclusory fashion, but without much of any concrete detail) that they were subjected to unlawful searches and seizures, privacy right violations, and excessive force[3]; that the aforementioned children were improperly removed from their home and placed in the care of non-native homes; and that "Plaintiffs were forced to allow and forced to watch their children[s'] and niece[']s sacred hair be mutilated and cut off in large patches." *Id*. This sort of rote repetition of conclusory and argumentative assertion does not satisfy the standards set forth above. As to Claim-11, Plaintiffs simply contend – again in conclusory fashion – that the County failed to adequately train, supervise, or reprimand the agents and officers with which Plaintiffs interacted, and that the County failed to promulgate adequate policies

---

[2] Claim-1 asserts violations of the Second, Fourth, & Fourteenth Amendments; Claim-2 asserts "gross negligence while acting under color of law"; Claim-3 is for "invasion of privacy & seclusion & disclosure of private facts & false light violations"; and Claim-11 appears to be a municipal liability claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See* FAC (dkt. 25) at 1, 14-22.

[3] It appears that Plaintiff McCloskey contends that he was subjected to excessive force during an arrest simply because he was handcuffed. *See* FAC (dkt. 25) at 13. An excessive force claim, evaluated under the Fourth Amendment, cannot be maintained against a police defendant if his or her use of force was objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396, 397 (1989) (in determining the reasonableness of force, the nature and quality of the intrusion on the individual's Fourth Amendment interests must be balanced against the countervailing government interests at stake); *see also Scott v. United States*, 436 U.S. 128, 137-139 (1978); and, *United States v. Robinson*, 414 U.S. 218 (1973); *see e.g.*, *Donovan v. Phillips*, 685 Fed. App'x. 611, 612 (9th Cir. 2017) (affirming a grant of summary judgment in favor of a highway patrolman in an excessive force case where the patrol man had gripped a non-compliant automobile passenger by the wrist, and pulled her arm downward causing her to roll onto the ground). Without alleging more than simply having been put into handcuffs during an arrest, Plaintiff likely cannot make out an excessive force claim that would survive a motion to dismiss.

regarding capturing and / or preserving videos and pictures on non-departmental devices. *See id*. at 14-22. Similarly, such rote recitation of a fraction of the elements of a *Monell* claim for Section 1983 liability against a municipality is insufficient. *See e.g., AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 638 n.6 (9th Cir. 2012). Accordingly, there are a number of problems with Claims 1, 2, 3, and 11. First, as mentioned, Plaintiffs have not stated enough actual facts (as contrasted with the FAC's verbose editorialization, its argumentative and conclusory statements, and its legal conclusions couched as factual allegations) to warrant relief under any of their asserted theories. Second, it appears that Claims 1, 2, 3, and 11 have been filed beyond the expiration of their relevant statutes of limitations and, therefore, may all be time-barred.[4] Therefore, because it appears to be theoretically possible for these defects to be remedied by amendment, Plaintiffs will be given one more opportunity to amend as it relates to these claims. Accordingly, Claims 1, 2, 3, and 11 are **DISMISSED with leave to amend**. In filing any amendment, Plaintiffs must take care to clearly specify the date of any factual allegation underlying any of these claims.

---

[4] In § 1983 cases, courts apply the forum state's statute of limitations for personal injury actions. *See Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007); *see also, Wilson v. Garcia*, 471 U.S. 261, 277-78 (1985) (explaining that § 1983 claims are akin to personal injury actions). In California, the statute of limitations for personal injury actions is the two-year period set forth in Cal. Code Civ. Proc. §335.1. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Accordingly, all of Plaintiffs' § 1983 claims against the individual defendants are subject to a two-year statute of limitations. Plaintiffs' section 1983 claim brought pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) is also governed by the two-year statute of limitations. *See Marlowe v. City & Cty. of San Francisco*, 753 F. App'x 479 (9th Cir. 2019); *see also Baker v. California Highway Patrol*, 601 F. App'x 556, 557 (9th Cir. 2015) (same) Of course, while state law determines the length of the limitations period in this context, federal law determines when a civil rights claim accrues. *See Morales v. Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000). Under federal law, a cause of action accrues when the "plaintiff knows or had reason to know" of the injury which is the basis of the action (*id*. at 1153-1154), it is therefore theoretically plausible that this defect may be cured by amendment. As it currently stands, the FAC reflects that Plaintiffs allege their injuries accrued on various dates, most of which occurred more than two years prior to filing their original complaint. *See* FAC, ¶14 (July 2020), ¶¶16-17; *see also* Notice of Removal, Exh. A (dkt. No. 1-1) at. 40 (Humboldt County Sheriff Elder Abuse Reports (July 2, 2020, November 11, 2020, November 14, 2020, November 20, 2020, and November 30, 2020). Based on the foregoing, it appears that a large part of Plaintiffs' § 1983 claims are based upon injuries accruing over two years ago, and which would be time-barred. To the extent Plaintiffs complain about an April 1, 2021, arrest or non-arrest police interaction (*see infra*), while that event appears to be within the limitations period, Plaintiffs' fail to state a claim for relief by failing to provide any concrete factual details that would state a claim of any sort. Once again, the court will remind Plaintiffs that if they wish to state a claim that can survive dismissal, they should avoid editorialization, argumentative statements, conclusory statement, and focus on presenting a clearly articulated set of factual allegations: what happened, when and where it happened, who was involved, what was said, and so on.

In purported relation to the fourth cause of action (labeled only as "Injunctive Relief) (*see id*. at 1), Plaintiffs assert that in July of 2020, and thereafter, certain unidentified employees of the County refused to "to honor the full-force and authority of the advanced health-care directive and durable power of attorney over person and property of Decedent Evelynn Natt," as a result of which, Plaintiffs content (without any cogent explanation) that they incurred "in excess of $58,000" of "injuries and verifiable damages." *Id*. The FAC then provides that certain Sheriff's Office deputies went "so far as to directly violate court protective orders for Decedent Natt and even grant[ed] the abusers access to Decedent Natt's residence despite both Mrs. Natt's person and the residence being secured by Protective Orders issued by the court on June 26, 2020, and despite Mrs. Natt's POA and acting agent, Plaintiff Allen Donald McCloskey having secured the residence and boarded all doors and windows and posted notice of no entry." *Id*. at 8. It is unclear to which "abusers" Plaintiffs refer, or to which "protective orders," that were issued by which court, and to what effect, or what might be the import of any of these events to any cognizable claim for relief in this court.

In any event, "injunctive relief" is not a claim – it is a remedy. *See e.g.*, *Madriz v. King City*, 2014 U.S. Dist. LEXIS 133954, *23 (N.D. Cal. 2014) ("Injunctive relief is not a claim, but a form of relief. Moreover, injunctive relief is not a proper remedy in this case. Plaintiffs fail to allege facts explaining why monetary damages would be an inadequate remedy and their explanation on irreparable injury is insufficient."). Accordingly, because "injunctive relief" is a remedy and not a standalone claim, Claim-4 is **DISMISSED with prejudice**. If Plaintiffs elect to file a Second Amended Complaint, and if they believe one or more of their standalone claims warrants injunctive relief, they can ask for such relief in that context. Injunctive relief – as to one or more of Plaintiffs' standalone claims – is contingent on them satisfying a test comprising four elements: (1) that they have suffered an irreparable injury; (2) that the remedies available to them at law, such as monetary damages, are inadequate to remedy that injury; (3) that, considering the balance of hardships between the Plaintiffs and Defendants, an extraordinary equitable remedy is warranted; and, (4) that the public interest would not be disserved by the imposition of a permanent injunction. *See e.g., eBay Inc. V. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

8

Once again, the court will remind Plaintiffs that satisfying this test cannot be achieved by simply repeating its elements in an amendment; instead, Plaintiffs would have to allege actual facts that would allow the court to determine that – in light of those facts – injunctive relief is warranted.

Claims 5, 7, 8, and 9 all plead violations of 18 U.S.C. § 242 (a federal criminal statute). *See* FAC (dkt. 25) at 8-10, 13. In this regard, the FAC then alleges that because the late Ms. Natt was "a severely incapacitated and cognitively-intellectually disabled person," and because Plaintiff McCloskey (as her "attorney-in-fact") had petitioned some unnamed court and had been "granted emergency protective orders" (the nature and extent of which have not been described), Plaintiffs were required (purportedly due to the misconduct alluded to above) to retain two law firms "at a cost exceeding $12,000 . . . just in an attempt to regain the safety and security of Decedent Natt." FAC (dkt. 22) at 9. The only explanation offered as to the import of this statement is that the payment of those legal fees would not have been required if some unspecified number of the named Defendants "would have simply followed the very clear and delineated power of attorney, advanced healthcare directive and executor (sic) over the person and property of Decedent Natt . . ." *Id*. The FAC goes on to state that, on July 2, 2020, that Plaintiff McCloskey, "acting with the authority of the court," called for assistance from the Humboldt County Sheriff's Department, but the responding officers "refused to honor the protective orders, refused to honor the durable power of attorney over the person and property and all advanced healthcare and personal property directives and refused to safeguard protected persons and property named in the court emergency protective orders . . . and failed to turn [something and/or someone] over to the care and custody [of Plaintiff McCloskey] . . ." *Id*. Instead, the FAC states that the responding officers "departed the residence and refused to return when called upon by dispatch, resulting in Mrs. Natt being kidnapped from her residence and isolated away from her primary care team, medical interventions and ultimately falling into failing health and being hospitalized . . ." *Id*. at 9-10. Plaintiffs have pleaded these facts in an effort to make out a claim under 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law), however § 242 is a federal criminal statute and provides no basis for no basis for civil liability. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In support of Claim-7 (entitled, "deliberate and willful indifference to seriously

9

disabled-incapacitated victims"), once again pleaded under the federal criminal statute found at 18 U.S.C. § 242, the FAC asserts that in November of 2020, Plaintiff McCloskey reported a burglary at his residence but the Sheriff's Department refused to investigate. FAC (dkt. 22) at 11. As with all the claims and allegations described above, the allegation underlying Claim-7 (even with the most liberal construction) is largely incomprehensible and so bereft of factual detail as to render it incapable of making out any claim at all. Similarly, Claim-8 (entitled: failure to intervene by uniformed deputies and acting agency representative) and Claim-9 (entitled: severe deprivation of rights under the color of law) are also both pleaded under the federal criminal statute found at 18 U.S.C. § 242. As mentioned above, § 242 provides no basis for no basis for civil liability. *See Aldabe*, 616 F.2d at 1092. However, the factual allegations pleaded thereunder could theoretically (if supplemented with a host of concrete factual allegations which are now missing) make out other claims under § 1983. In this regard, the FAC alleges that on April 1, 2021, two Humboldt County deputies and one officer from the Hoopa Tribal Police allegedly trespassed on Plaintiff McCloskey's property, falsely arrested him, referred to him as a "Rancheria Indian," attempted to issue him some sort of undescribed citation only to later retract it; that they subjected him to excessive force, and illegally searched and seized his property (including one or more of his firearms); and, that they subsequently identified him (purportedly falsely) as a felon. FAC (dkt. 22) at 12-13. As stated, Plaintiffs can re-plead these allegations (hopefully more coherently) in support of a § 1983 claim; but, because 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law) is a federal criminal statute and provides no basis for no basis for civil liability, Claims 5, 7, 8, and 9 are **DISMISSED with prejudice**.

To the extent that Plaintiffs wish to re-plead the narrative allegations underlying Claims 5, 7, 8, and 9, in a Second Amended Complaint in order to make out a civil rights claim under § 1983 (requiring a showing that, acting under color of state law, state actors deprived Plaintiffs of rights secured to them by the U.S. Constitution or other federal laws), they are free to do so. However, with the apparent exception of the alleged 2021 arrest, most of these events appear to have occurred outside of limitations period and may be time-barred. There is also the fact that the factual presentation described above is woefully inadequate as it is totally unclear whether any of

10

the elements of a § 1983 (let alone all) can be satisfied. It is also far from clear on the showing before the court that Plaintiffs would have standing to bring any such claims on behalf of the late Ms. Natt.

In support of Claim-6 – alleging violations of the Americans With Disabilities Act of 1990 and the Rehabilitation Act of 1973 – the FAC alleges that on November 20, 2020, Humboldt County Sheriff's Deputy J. Hearn contacted Plaintiff McCloskey and informed him that he would be arrested if he attempted to see Ms. Natt or to visit her residence in Trinidad. FAC (dkt. 22) at 10. Without any detail or explanation, the FAC contends that this constituted "gross negligence while acting under color of law," police officer misconduct, violations of the disabled persons act, deliberate and willful indifference to a seriously disabled victim, and "excessive depravation of rights and due process" – as a result of which, Plaintiffs contend that they lost the opportunity to spend valuable time with Ms. Natt, who passed away two years later in December of 2022. *Id*. The FAC also re-alleges that this admonition from Deputy Hearn was also responsible for Plaintiffs' decision to spend $12,000 in retaining the two law firms mentioned above. *Id*. at 10-11. What is not clear, of course, if how Deputy Hearn's admonition to Plaintiff violated any section of either the Americans With Disabilities Act ("ADA") (42 U.S.C. § 12101, *et. seq*.) (prohibiting discrimination against individuals with disabilities in various areas of public life, including jobs, schools, transportation, and all public and private places that are open to the general public – ensuring that people with disabilities have the same rights and opportunities as everyone else) or the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et. seq*.) (prohibiting discrimination on the basis of disability in programs conducted and funded by the federal government). Nothing in the FAC even approaches stating a claim under the ADA or the Rehabilitation Act, nor does it appear that this defect can be remedied by amendment; accordingly, Claim-6 is **DISMISSED with prejudice**.

Claim-10 asserts a cause of action under the Ralph Act Civil Rights Act (*see* Cal. Civ. Code §§ 51.7, 52, 52.1) (states that it is a civil right for a person to be free of violence or its threat against the person or his or her property based on a wide range of personal characteristics, including sexual orientation or the perception of sexual orientation). *See* FAC (dkt. 22) at 14. However, the FAC pleads no supportive facts under this claim other than to simply declare in

11

1   eminently conclusory fashion (without any other detail) that Plaintiffs were subject to an

2   unreasonable search and seizure. *See id*. Because the court is not confident that this defect cannot

3   be remedied by amendment, Claim-10 is **DISMISSED with leave to amend**.

4       It should also be noted that while the cover sheet of the FAC identifies Claim-10 as being

5   pleaded under the Indian Child Welfare Act (25 U.S.C. §§ 1901-1963) (federal law governing the

6   separation of Native American families) (*see* FAC (dkt. 25) at 1), the body of the FAC itself

7   tethers Claim-10 to the Ralph Act (*see id*. at 14). Plaintiffs have indeed alleged they became foster

8   and adoptive parents – though they have not clearly alleged that some or all of the children were

9   Native American. *See id*. at ¶10. They have also alleged that there were two removals of children

10   from their care, and they have asserted that these removals constituted violations of the Indian

11   Child Welfare Act. *Id*. at ¶12. Plaintiffs have not presented any factual allegations that would

12   explain *how* the alleged removals violated that enactment, nor have they explained which agency

13   or individuals removed these children, or for how long, or under what conditions, or pursuant to

14   which state court's proceedings and order, or for what stated reasons. All of these details would be

15   necessary for the court to determine if those removals violated federal law. If Plaintiffs wish to

16   plead a claim under the Indian Child Welfare act in a Second Amended Complaint, they are free to

17   do so with the caveat that Plaintiffs are to identify the specific provision of that enactment under

18   which they claim a violation, while providing the requisite degree of detailed factual allegations to

19   make out a violation under the terms of the specific provision upon which they rely.[5] Plaintiffs

20   cannot simply state that children were removed from their care and claim a violation of the Act –

21   instead, the details set forth above are necessary in order for the claim to survive dismissal.

---

[5] The purpose of this enactment is to rectify state agency and court actions that result in the improper removal of Native American children from their communities and heritage. *See Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005). "At the heart of [the Act] lies a jurisdictional scheme aimed at ensuring that tribes have a role in adjudicating and participating in child custody proceedings involving Indian children domiciled both on and off the reservation." *Id*. at 1049. The Act contains provisions granting tribes jurisdiction in child custody matters involving Indian children. *See* 25 U.S.C. § 1911. The Act also sets out substantive provisions to be applied in pending court cases involving adoption or foster care placement of Native American children or the termination of parental rights. *Id*. §§ 1915, 1912. In addition, the Act allows any Native American child, parent, or custodian to petition the courts to invalidate foster care placement or termination of parental rights under state law. *Id*. § 1914.

12

1    Although they have not pleaded it as a claim for relief, Plaintiffs' various allegations
2    suggest that they wish to also claim that they have been defamed during "family team meetings"
3    and "placement preservation meetings"; however, they do not identify the context or date of the
4    meetings, the details of the allegedly defamatory statements, the allegedly culpable parties, or the
5    persons to whom these statements were communicated or published. *See* FAC (dkt. 25) at ¶13, and
6    generally. Further, the FAC alleges that Plaintiff McCloskey was publicly identified as a felon in a
7    press release issued by Defendants but does not explain the circumstances surrounding the press
8    release (including the date of its publication), or whether the identification was as a convicted
9    felon or an accused felon; nor does FAC allege that this identification was false. *See id*. at ¶¶12,
10   22-23, 38. If Plaintiffs wish to add a defamation claim, they are free to do so, however, they
11   should add enough concrete factual details about *when* and *how* the defamation occurred, by
12   whom it was committed, what was said or written, to whom it was published or communicated,
13   whether or not the statement was false, and whether or not the statement was injurious to their
14   reputation.[6]

15   In a similar fashion to their assertions of defamation, Plaintiffs also have peppered the
16   FAC with allegations touching upon various conceptions of privacy rights violations, including
17   invasion of privacy, disclosure of private facts, and invasion of privacy by false-light publication.
18   *See* FAC (dkt. 25) at ¶ 26 (stating that some undescribed quantum of unspecified private
19   information that may have been disclosed during by a deputy, during a haircut, at a barber shop).
20   Elsewhere in the FAC, Plaintiffs appear to complain more generally about various invasions of
21   privacy without setting forth supporting factual allegations. *See id*. at ¶¶ 32, 37, 39, 43, 52. As to
22   the false-light claim, the Supreme Court of California has explained that a "false light cause of
23   action 'is in substance equivalent to . . . [a] libel claim, and should meet the same requirements of
24   the libel claim . . .'" *Briscoe v. Reader's Digest Ass'n*, 4 Cal.3d 529, 543, 93 Cal. Rptr. 866, 483
25   P.2d 34 (1971) (quoting *Kapellas v. Kofman*, 1 Cal.3d 20, 35 n. 16, 81 Cal. Rptr. 360, 459 P.2d

---

[6] Under California law, the elements of a defamation claim are "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *See Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369, 117 Cal. Rptr. 3d 747 (2010). Importantly, Plaintiffs should note that California's statute of limitations for defamation is one year. *See* Cal. Civ. Proc. Code § 340(c).

912 (1969)). In light of that, "[w]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1385 n. 13, 88 Cal. Rptr. 2d 802 (1999).

To the extent that Plaintiffs wish to present claims under the California constitution for intrusion upon seclusion or invasion of privacy, the following standards would apply. To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]" and (2) that the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286, 97 Cal. Rptr. 3d 274, 211 P.3d 1063 (2009); *see also Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 601 (9th Cir. 2020). A claim for invasion of privacy under the California Constitution involves similar elements. Establishing such a claim requires Plaintiffs to show that (1) they possess a legally protected privacy interest; (2) that they maintain a reasonable expectation of privacy; and, (3) that the intrusion is "so serious . . . as to constitute an egregious breach of the social norms" such that the breach is "highly offensive." *Hernandez*, 47 Cal. 4th at 287; *see also Facebook*, 956 F.3d at 601.

Thus, in addition to granting Plaintiffs leave to amend Claims 1, 2, 3, 10, and 11 (to the extent described above) if they so choose, Plaintiffs shall also be permitted to plead claims under Indian Child Welfare Act (25 U.S.C. §§ 1901-1963), and state-law claims for defamation, invasion of privacy, intrusion upon seclusion, and / or invasion of privacy by false-light publication. However, the court will once again admonish them regarding Rule 8's requirement for a clear and concise statement of facts underlying their claims for relief. Any amended complaint to be filed shall be clearly labelled "Second Amended Complaint." The pleading shall have a separate section entitled, "Statement of Facts." That fact statement shall consist of **only** factual statements without any editorialization, argumentative content, or legal conclusions. As mentioned above, factual statements concern things such as: what happened, when it happened, where it happened, how it happened, by whom an act was done, by whom a statement was made,

and so on and so forth. The fact statement shall contain the entirety of the factual allegations underlying all of the claims for relief. Following the statement of facts, Plaintiffs shall set forth each claim for relief in a separate section, under which they shall clearly set forth the nature of the claim (in light of the standards that the court has set forth for Plaintiffs' benefit herein) along with a **clear and concise** recitation of which facts support that claim and an explanation as to why Plaintiffs are entitled to relief in that regard. In light of the statutes of limitations issues discussed herein, Plaintiffs shall take special care to clearly set forth dates and timelines regarding the facts underlying each of their claims – failure to do so may result in individual claims – or the entirety of the complaint – being stricken. Furthermore, if Plaintiffs' next operative complaint fails to satisfy Rule 8's requirements as to clarity and conciseness, the court will dismiss it summarily. Lastly, because this will likely be Plaintiffs' final opportunity to file an amended pleading, Plaintiffs would be well advised to be heedful of the various arguments made by Defendants regarding their allegations and claims as currently-pleaded. *See generally* Defs.' Mot. (dkt. 25) at 14-32.

## CONCLUSION

As stated herein, Defendants' motion to dismiss the FAC with prejudice is granted in part and denied in part, and Plaintiffs' FAC is **DISMISSED**. Claims 1, 2, 3, 10, and 11 are **DISMISSED with leave to amend**; and Claims 4, 5, 6, 7, 8, and 9 are **DISMISSED with prejudice**. Furthermore, Plaintiffs' requests to supplement the FAC (dkts. 26, 32) are **DENIED**. If Plaintiffs wish to file an amended pleading, they must do so within 30 days of the date of this order. Failure to file an amended pleading may result in the case being dismissed.

**IT IS SO ORDERED.**

Dated: November 14, 2023.

ROBERT M. ILLMAN
United States Magistrate Judge